IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ALEXANDRIA A. DELANO                                                    PLAINTIFF

      v.                         Civil No. 2:20-cv-02137-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,[1]
Social Security Administration                                          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Alexandria A. Delano, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration ("Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

## I.      Procedural Background

Plaintiff filed her applications for benefits on December 16, 2017, alleging disability beginning May 25, 2016, due to fibromyalgia, major depression, anxiety, idiopathic intracranial hypertension, and endometriosis.  (ECF No. 14-2, p. 11; ECF No. 14-6, p. 3).  Plaintiff was 21 years old on the alleged onset date, had a high school education, and was unable to perform any past relevant work.  (ECF No. 14-2, pp. 20-21).  The Commissioner denied her applications initially and on reconsideration.  (*Id*., p. 11).  At Plaintiff's request, an Administrative Law Judge

---

[1] Kilolo Kijakazi became Acting Commissioner of the Social Security Administration on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

("ALJ") held an administrative hearing on May 30, 2019.  (*Id.*, pp. 11, 30-55).  Plaintiff was present and represented by counsel.  (*Id.*, pp. 11, 32).

On October 25, 2019, the ALJ concluded that Plaintiff's anxiety, fibromyalgia, depression/bipolar II, bilateral papilledema with scatoma and eye injury, headaches, chronic pain syndrome, borderline personality/personality disorder with borderline and dependent traits, morbid obesity, right knee patella dislocation, and patellofemoral dislocations of both knees with surgery on the left knee were severe, but she concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (ECF No. 14-2, pp. 14-16).  She found Plaintiff capable of performing sedentary work, except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl; perform simple instructions, tasks, and work-related decisions; and tolerate occasional interaction with supervisors, co-workers, and the general public.  (*Id.*, pp. 16-20).  With the assistance of a vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work as a compact assembler, eyeglass frames polisher, and ordnance checker.  (*Id.*, pp. 21-22).

The Appeals Council denied Plaintiff's request for review on June 18, 2020.  (ECF No. 14-2, pp. 1-5).  Plaintiff then filed this action.  (ECF No. 1).  This matter is before the undersigned for report and recommendation.  Both parties have filed appeal briefs (ECF Nos. 17, 20), and the case is ready for decision.

## II.    Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings.  *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010).  Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).  We must

affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record supporting the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The

fact finder only considers Plaintiff's age, education, and work experience in the light of her residual functional capacity if the final stage of the analysis is reached.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.    Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ properly evaluated Plaintiff's RFC, and (2) whether the ALJ made a proper Step Five determination.  After thoroughly reviewing the record, the undersigned finds that substantial evidence does not support the ALJ's RFC finding.  Because reversal and remand is warranted on this issue, Plaintiff's remaining argument will not be addressed.

Residual functional capacity ("RFC") is the most a person can do despite that person's limitations.  20 C.F.R. §§ 404.1545, 416.945.  A disability claimant has the burden of establishing her RFC.  *Vossen*, 612 F. 3d at 1016.  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  A claimant's residual functional capacity "is a medical question."  *Miller*, 784 F.3d at 479 (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

The ALJ is required to consider all the evidence relating to a claimant's subjective complaints, including: (1) the claimant's daily activities; (2) the duration, frequency, and intensity

4

of his or her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of his or her medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Id*.

An ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ . . . may disbelieve subjective reports because of inherent inconsistencies or other circumstances." *Wright v. Colvin*, 789 F.3d 847, 853 (8th Cir. 2015) (citing *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) (quotation and citation omitted)). The Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

However, "while the ALJ may disbelieve subjective testimony of pain if inconsistencies exist in the evidence as a whole, the ALJ may not disbelieve the claim by ignoring medical evidence. In the context of a fibromyalgia case, the ability to engage in activities such as cooking, cleaning, and hobbies does not constitute substantial evidence of the ability to engage in substantial gainful activity." *Grindley v. Kijakazi*, No. 20-1946, 2021 WL 3556102, at *5 (8th Cir. Aug. 12, 2021) (citing *Brosnahan v. Barnhart*, 336 F.3d 671, 677 (8th Cir. 2003); *Rainey v. Bowen*, 814 F.2d 1279, 1281 (8th Cir. 1987)) (cleaned up).

Here, the ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical evidence. (ECF No. 14-2, pp. 16-20). In so finding, she referenced treatment notes describing Plaintiff's systems as unremarkable or stable despite consistent findings of diffuse pain due to fibromyalgia. (*Id.*). The ALJ pointed to a gap in treatment, occasional advice to exercise, surgical history, occasional efficacy of medication, and Plaintiff's statements regarding her functionality. (*Id.*). In her summary of the

evidence, the ALJ made note of Plaintiff's statements describing her symptoms as somewhat better or describing a particular medication or procedure as helping. (*Id.*). She additionally referenced Plaintiff's ability to drive occasionally, scoop litter boxes, manage her own as well as her father's finances, prepare daily sandwiches, go out to eat occasionally, and use a phone and computer to shop and socialize. (*Id.*). The ALJ then found Plaintiff capable of performing sedentary work except that she can occasionally climb, balance, stoop, kneel, crouch, and crawl; perform simple instructions, tasks, and work-related decisions; and tolerate occasional interaction with supervisors, co-workers, and the general public.

Objective evidence in the record, however, is not inconsistent with Plaintiff's complaints of pain. In June, July, and August 2015, Plaintiff sought treatment for headaches, body aches, fatigue, and anxiety. (ECF No. 14-7, pp. 26-32). Plaintiff was prescribed Fioricet, Fluoxetine, Ativan as needed, cyclobenzaprine, metaxalone, Topamax, Cymbalta, and iron supplements.[2] (*Id.* at 28-38). In September 2015, she still complained of headaches and body aches but reported improved anxiety with Cymbalta. (*Id.* at 24-25). In February and March 2016, Plaintiff continued to report anxiety and headaches and complained of low back pain, neck pain, and leg pain. (*Id.* at 14-15). She reportedly stopped taking Topamax due to memory loss and stopped taking Metaxalone as it was not working. (*Id.*). The treating physician also assessed Plaintiff for vitamin D deficiency, fibromyalgia, and frequent nosebleeds. (*Id.* at 11-13). While cervical and lumbar

---

[2] Fioricet is used to relieve tension headaches. *See* Acetaminophen, Butalbital, and Caffeine, at https://medlineplus.gov/druginfo/meds/a601009.html (last accessed Aug. 16, 2021). Fluoxetine is used to treat depression. *See* Fluoxetine, at https://medlineplus.gov/druginfo/meds/a689006.html (last accessed Aug. 16, 2021). Ativan is used to relieve anxiety. *See* Lorazepam, at https://medlineplus.gov/druginfo/meds/a682053.html (last accessed Aug. 16. 2021). Cyclobenzaprine is a skeletal muscle relaxant. *See* Cyclobenzaprine, at https://medlineplus.gov/druginfo/meds/a682514.html (last accessed Aug. 16, 2021). Metaxalone is a muscle relaxant. *See* Metaxalone, at https://medlineplus.gov/druginfo/meds/a682010.html (last accessed Aug. 16, 2021). Topamax is used to prevent migraine headaches. *See* Topiramate, at https://medlineplus.gov/druginfo/meds/a697012.html (last accessed Aug. 16, 2021). Cymbalta is used to treat depression and generalized anxiety disorder. It is also used to treat pain caused by fibromyalgia. See *Duloxetine*, at https://medlineplus.gov/druginfo/meds/a604030.html (last accessed Aug. 16, 2021).

spine x-rays showed no acute abnormality and the physical exam was unremarkable, the treating physician noted Plaintiff's headaches were likely related to her neck pain, gave her tizanidine hydrochloride for neck or muscle pain, and increased Plaintiff's Cymbalta dose. (*Id.* at 14-15, 17-18).

In May and June 2016, Plaintiff continued to complain of pain 'all over,' including lower back, legs, and neck. (*Id.* at 5-10). She was assessed for fibromyalgia, low back pain, neck pain, anxiety, vitamin D and iron deficiency, leg pain, restless legs, and tachycardia. While the physical exams were unremarkable, it was noted that her fibromyalgia pain was worsening. Plaintiff was referred to rheumatology and cardiology and given a B12 injection. She was advised to try walking or doing pool or light weight resistance exercises, and her medications were increased. (*Id.* at 4-10).

One year later, in May 2017, Plaintiff was treated for papilledema and exotropia. (ECF No. 14-7, pp. 53-64). Plaintiff reported that her headaches, though decreased in frequency, were still present. (*Id.* at 53-59). A brain MRI showed no abnormalities, but Plaintiff reported the continued presence of muscle and joint pain, depression, and anxiety. She was prescribed Venlafaxine[3] and referred to neurology. (*Id.* at 60-64).

In July and August 2017, Plaintiff reported increased fatigue, back pain, irregular menstruation with abdominal pain, and headaches. (ECF No. 14-8, pp. 23-31; ECF No. 14-7, pp. 47, 71-73). She reported improved anxiety and depression symptoms with Cymbalta but requested an increased dosage as the symptoms were still present. (ECF No. 14-8, pp. 23-28). She was assessed for diffuse pain syndrome, referred to psychiatry for possible bipolar disorder and

---

[3] Venlafaxine is used to treat depression. *See* Venlafaxine, at https://medlineplus.gov/druginfo/meds/a694020.html (last accessed Aug. 16, 2021).

gynecology for an ultrasound, and advised to exercise.  (ECF No. 14-8, pp. 23-28, ECF No. 14-7, pp. 47, 71-73).

In September and October 2017, Plaintiff reported constant joint and body aches, anxiety, insomnia, variable depression, blurry vision, daily headaches, and irregular menstruation with pelvic pain.  (ECF No. 14-7, pp. 43-45, 69-71, 91-95; ECF No. 14-8, pp. 20-23).  She was taking Flexeril as needed for pain, and Cymbalta, which she felt was helping.  Her medications also included Zoloft and Vistaril.[4]  (ECF No. 14-7, pp.  91-92).  While her affect was congruent with moods reported as "okay" or "crying a lot," she displayed good insight and judgement, and mental status exams described the rest of her systems as normal, within normal limits, and average.  (*Id.* at pp. 91-95).  She was diagnosed with major depressive disorder and borderline personality disorder.  (*Id.*  at pp. 93-95).

In November and December 2017, Plaintiff continued treatment for pain, headaches, depression, and anxiety.  (ECF No. 14-7, pp. 74-75, 85-90; ECF No. 14-8, pp. 11-20; ECF No. 14-9, pp. 43-45, 47, 49).  Physical exams showed morbid obesity; diffuse tenderness over back, sternum, forearms, and legs; and a distressed, flat affect.  (ECF No. 14-8, pp. 11-16).  Plaintiff was diagnosed with fibromyalgia and prescribed gabapentin and omeprazole.[5]  (ECF No. 14-8, pp. 16-20).  She also continued Topamax for headaches.  (ECF No. 14-9, pp. 43-35, 47, 49).  To her treating counselor, Plaintiff reported increased panic attacks, limited socializing, poor energy and motivation, increased appetite, and more feelings of depression.  (ECF No. 14-7, pp. 85-90).  The treating counselor noted that Plaintiff demonstrated good medication compliance and denied any

---

[4] Zoloft is used to treat depression.  *See* Sertraline, at https://medlineplus.gov/druginfo/meds/a697048.html (last accessed Aug. 17, 2021).  Vistaril is used to relieve itching caused by an allergy.  It is also used to relieve anxiety. *See* Hydroxyzine, at https://medlineplus.gov/druginfo/meds/a682866.html (last accessed Aug. 17, 2021).
[5] Gabapentin is used to treat seizures and relieve pain.  *See* Gabapentin, at https://medlineplus.gov/druginfo/meds/a694007.html (last accessed Aug. 17, 2021).  Omeprazole is used to treat gastroesophageal reflux disease (GERD).  *See* Omeprazole, at https://medlineplus.gov/druginfo/meds/a693050.html (last accessed Aug. 17, 2021).

side effects after her medications were adjusted. (ECF No. 14-7, pp. 85-90). She continued taking Wellbutrin,[6] Vistaril, and Ativan, which she found beneficial, and the treating counselor deemed her prognosis good. (*Id.*).

In January and February 2018, Plaintiff continued treatment for fibromyalgia, low back pain, papilledema of bilateral eyes, headaches, blurry vision, and bipolar II disorder. (ECF No. 14-8, pp. 7-11; ECF No. 14-9, pp. 9-22, 40, 42). She underwent surgery for alternating exotropia and reported being happy with the results. (ECF No. 14-9, pp. 9-22, 40).

In March and April 2018, Plaintiff reported that the eye surgery had decreased migraines and blurred vision and that her nerves were improved with a regimen of daily Topamax. (ECF No. 14-9, pp. 85-88). She found amitriptyline[7] effective but continued to report anxiety and depression that interfered with household activities, sleep, and work. She also complained of low back pain that was not relieved by physical therapy or pain medications, and the treating physician recommended knee exercises and ibuprofen for the new knee pain Plaintiff described. (*Id.*).

In May and June 2018, Plaintiff was assessed for fibromyalgia, fatigue, bipolar II, and low back pain. (ECF No. 14-9, pp. 78-82). A physical exam showed obesity, depressed mood, and diffuse tenderness over back, sternum, forearms, and legs. Plaintiff reported increased nerve pain, and, to treat her fatigue, Plaintiff was scheduled for monthly B12 injections. The treating physician managing Plaintiff's bipolar II, Dr. Chambers, continued Plaintiff on Ativan as needed. He also discontinued Latuda[8] for Plaintiff as it did not provide much effect for her. (*Id.* at 78-82, 96).

---

[6] Wellbutrin is used to treat depression. *See* Bupropion, at https://medlineplus.gov/druginfo/meds/a695033.html (last accessed Aug. 17, 2021).
[7] Amitriptyline is used to treat depression. *See* Amitriptyline, at https://medlineplus.gov/druginfo/meds/a682388.html (last accessed Aug. 17, 2021).
[8] Latuda is used to treat schizophrenia and bipolar disorder. *See* Lurasidone, at https://medlineplus.gov/druginfo/meds/a611016.html (last accessed Aug. 17, 2021).

In July and August 2018, Plaintiff continued treatment for mental health, fatigue, and pain. (ECF No. 14-9, p. 97; ECF No. 14-10, pp. 2-9).   Dr. Chambers noted that Vraylar[9] achieved a good response for Plaintiff and advised her to continue Ativan as needed.   (ECF No. 14-9, p. 97). As to her fatigue, Plaintiff reported that the monthly B12 injections improved her energy.   (ECF No. 14-10, pp. 2-5).   Physical exams showed morbid obesity due to excess calories, but Plaintiff reported that phentermine[10] succeeded in decreasing her appetite.   Physical exams still showed diffuse tenderness over back, sternum, forearms, and legs, and the treating physician continued Plaintiff on phentermine and Topamax.   (ECF No. 14-10, pp. 2-9).   Plaintiff was also referred to orthopedics to address her knee pain.   (*Id.*).

From September to November 2018, Plaintiff continued treatment for headaches and knee pain.   (ECF No. 14-10, pp. 56-60, 61-66, 76, 81-84; ECF No. 14-11, pp. 10-13).   Plaintiff complained of daily headaches and her medications were adjusted.   (ECF No. 14-10, pp. 61-66). As to knee pain, she described pain while climbing stairs, kneeling, and sitting at 90 degrees but three over-the-counter ibuprofens intermittently alleviated that pain.   She clarified that she did not take that amount of ibuprofen routinely.   (ECF No. 14-10, pp. 56-60).   X-rays showed mild spurring, and Plaintiff was continued on anti-inflammatory treatments and given pain injections. (*Id.*).

Plaintiff was later given Norco following a patella tendon tear of the right knee.   (ECF No. 14-10, pp. 76, 81-82).   She reported that knee injections most effectively alleviated, though did not eliminate, her pain.   The physical exams showed significant quad weakness and lateral-riding

---

[9] Vraylar is an atypical antipsychotic used to treat schizophrenia and depression in people with bipolar disorder.  *See* Cariprazine, at https://medlineplus.gov/druginfo/meds/a615050.html (last accessed Aug. 18, 2021).
[10] Phentermine is used for weight loss in overweight people.  *See* Phentermine, at
https://medlineplus.gov/druginfo/meds/a682187.html (last accessed Aug. 18, 2021).

patella, and Plaintiff was recommended for evaluation with a surgeon.  (ECF No. 14-10, pp. 83-84, 87).

In January 2019, Plaintiff underwent a left knee arthroscopy, chondroplasty patella, and open medial retinacular reefing with lateral retinacular release.  (ECF No. 14-10, pp. 88, 91).  During the follow-up appointment in February, stitches were removed, and the exam showed no signs of infection, no calf tenderness, and no need for x-rays.  (ECF No. 14-11, p. 38).  Plaintiff was given pain medication and was scheduled to start gentle therapy.  (*Id.*).

In May and June 2019, Plaintiff continued treatment for headaches and mental health.  (ECF No. 14-11, pp. 40, 49-57).  Though no longer occurring daily, Plaintiff reported migraines a couple of times a week.  (ECF No. 14-11, p. 40).  The exam showed no edema, but the treating physician increased Plaintiff's amitriptyline.  (*Id.*).  As to her mental health, Plaintiff was assessed for moderately severe depression and mild anxiety.  (ECF No. 14-11, pp. 49-57).  The exam showed that her past psychiatric issues were not currently active, and all systems were appropriate for her age and IQ, though she still exhibited a low mood.  (*Id.*).  She was referred to therapy, started on Abilify,[11] and continued Cymbalta and Lorazepam.

As to the opinion evidence, the ALJ primarily relied on the opinions of non-examining physicians that appeared to contradict the opinions of examining physicians.  (ECF No. 14-2, pp. 16-20).  In May 2018, non-examining state agency consultants, Dr. Takach and Dr. Clemens, determined that Plaintiff could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; stand, walk, and sit for six hours in an eight-hour workday; occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; and perform at least unskilled work.  (ECF No. 14-3, pp. 13-16, 29-32).  The ALJ found these opinions

---

[11] Abilify is used to treat schizophrenia, bipolar disorder, and depression.  *See* Aripiprazole, at https://medlineplus.gov/druginfo/meds/a603012.html (last accessed Aug. 18, 2021).

partially persuasive.  (ECF No. 14-2, pp. 16-20).  In September 2018, non-examining state agency consultants, Dr. Alberty and Dr. Hazelwood, determined that Plaintiff was capable of light, unskilled work with some postural limitations (ECF No. 14-2, pp. 64-68, 82-86), and the ALJ found these opinions persuasive (ECF No. 14-2, pp. 16-20).

In August 2018, treating physician, Dr. Sills, submitted an RFC questionnaire assessing additional limitations for Plaintiff.  (ECF No. 14-10, pp. 51-53).  Dr. Sills stated that he had a treating relationship with Plaintiff for approximately three months for diagnoses of fibromyalgia and bipolar depression.  Based on his observations of Plaintiff's pain, fatigue, and weakness, Dr. Sills opined that Plaintiff could stand and walk for less than two hours and sit for up to three hours in an eight-hour workday.  He opined that Plaintiff would need a job permitting shifting positions at will with unscheduled breaks, only occasional lifting and carrying of 20 pounds, and numerous postural and manipulative limitations.  He opined that Plaintiff would be 75% less productive than a healthy individual and would be absent from work more than four times a month due to her impairments.  (*Id.*).  The ALJ found this opinion unpersuasive based on treatment notes advising exercise and showing normal gait and full strength.  (ECF No. 14-2, pp. 16-20).

In July 2018, Dr. Walz completed a mental status examination of Plaintiff and concluded that Plaintiff's social skills would be impaired by irritability and dislike for people, that her attention and concentration were impaired, her ability to complete tasks would be influenced by her mood, and her speed of information processing would be variable.  (ECF No. 14-9, pp. 98-103).  The ALJ found this opinion somewhat persuasive, noting that it was somewhat vague.  (ECF No. 14-2, pp. 16-20).  In October 2018, Dr. Chambers submitted a mental medical source statement finding only mild mental limitations but noting that fibromyalgia appeared to be Plaintiff's main limiting factor.  (ECF No. 14-10, pp. 73-75).  The ALJ found this opinion unpersuasive as it was

inconsistent with treatment notes showing significant mental limitations.  (ECF No. 14-2, pp. 16-20).

While the ALJ also found Plaintiff's reported functionality inconsistent with her complaints of disabling pain, we cannot agree that Plaintiff's occasional ability to participate in some life activities contradict the objective medical evidence of record.  In her decision, the ALJ seems to suggest that Plaintiff's occasional ability to drive and go out to eat less than weekly oppose her allegations of disabling pain.  (ECF No. 14-2, pp. 16-20).  Plaintiff described her mood as "better" and explained to Dr. Walz that she was able to go out to shop on just one recent occasion due to the positive effect of Vraylar.  (ECF No. 14-9, pp. 98-103).  She stated that she could drive but would get lost, could watch TV but would fall asleep, and could go out to a restaurant or bar with a friend but would leave the house less than weekly.  She reported that she could play games with her fiancé, but she did not belong to any social organizations and could no longer paint due to arm pain.  (*Id.*).

Plaintiff's disability and function reports are also consistent with the treatment record.  Plaintiff's disability report alleged disabling medical conditions of fibromyalgia, major depression, anxiety, idiopathic intracranial hypertension, and endometriosis.  (ECF No. 14-6, pp. 2-12).  She reported attempts to manage pain with medication and rest, but that no combination of medications could manage pain, and, as a result, she stayed in bed or on the couch all day.  (*Id.*).

In her function report, Plaintiff described distracting pain that required her to lie down most of the day.  (ECF No. 14-6, pp. 26-33).  She stated that she could not get out of bed on some days and, when she did, she had to lie on the couch or in the recliner.  Her only reported activities were watching TV, scooping the litter boxes for five minutes almost daily, shopping for groceries by computer for up to one hour twice a month, making sandwiches for lunch, managing her father's

13

finances, reminding him to complete his personal care, and only going out for medical appointments.  (*Id.*).  She explained that driving gave her anxiety and physically exhausted her, though she was able to do it.  She could only walk for five minutes before needing to rest, had problems with showering and hair care due to fatigue, and could not stand to prepare dinner.  (*Id.*).

Given Plaintiff's treatment history for pain, fatigue, and anxiety consistent with her diagnosis of fibromyalgia, we cannot say that these reports of extremely limited daily activities contradict her allegations of disabling pain.  We note that fibromyalgia's symptoms, including daytime fatigue and pain, are entirely subjective and can include flare ups exacerbated by other factors.[12]  "The disease is chronic, and diagnosis is usually made after eliminating other conditions, as there are no confirming diagnostic tests.  We have long held that fibromyalgia has the potential to be disabling." *Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004) (citing *Brosnahan*, 336 F.3d at 672 n.2; *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)) (cleaned up).

Plaintiff's physical exams consistently revealed diffuse pain over her back, sternum, forearms, and legs; fatigue; headaches; and anxiety.  While the ALJ made note of Plaintiff's ability to use the computer or phone to shop, socialize, watch TV, and manage her own and her father's finances, these activities would not require her to leave the bed, couch, or recliner.  The ALJ also points to Plaintiff's ability to make a sandwich for lunch and scoop the litter boxes almost daily, but such limited daily activities do not necessarily support the ability to engage in substantial gainful activity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc) (the test is whether the claimant has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world") (abrogated on other grounds by *Higgins v. Apfel*, 222 F.3d 504, 505 (8th Cir. 2000)).  We also

---

[12] *See* MERCK MANUAL, *Fibromyalgia*, at https://www.merckmanuals.com/professional/musculoskeletal-and-connective-tissue-disorders/bursa-muscle-and-tendon-disorders/fibromyalgia (last accessed Aug. 20, 2021).

cannot agree that occasionally sitting in a restaurant or bar for one meal suggests the ability to engage in sedentary work even with postural limitations as set out in the ALJ's RFC finding. Moreover, multiple medication adjustments and occasional advice to exercise in response to the improvement and subsequent worsening of symptoms are consistent with management of fibromyalgia.  Thus, Plaintiff's periodic reports improvement of some symptoms are not incompatible with disabling pain due to fibromyalgia.

Therefore, we do not find substantial evidence in the record to support the ALJ's conclusion that Plaintiff can perform sedentary, unskilled work with postural limitations.  We also find that a physical consultative examination is necessary to determine the true restrictions imposed by Plaintiff's impairments.  Accordingly, the undersigned finds that substantial evidence does not support the ALJ's decision in this case, and the case must be reversed and remanded to allow the ALJ to reconsider the evidence concerning Plaintiff's RFC.

### V.    Conclusion

Based on the foregoing analysis, it is recommended that this case be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 26th day of August 2021.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

15